IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHANNON D. STEVENS,         )
          )
         Plaintiff,      )
          )
     v.          )         1:25-cv-931
          )
CITY OF GREENSBORO, et al.,     )
          )
         Defendants.    )

## <u>MEMORANDUM OPINION AND ORDER</u>

Lindsey A. Freeman, United States District Judge.

Plaintiff Shannon Stevens ("Stevens") filed her now-operative amended complaint (the "Amended Complaint") against the City of Greensboro (the "City") and several other named individuals (the "Official Defendants") alleging violations of her Fourteenth Amendment right to procedural due process and other rights protected under state law. Claiming that the Defendants infringed her constitutionally-protected liberty interest in her reputation, Stevens asserts that she was wrongly deprived of an opportunity to refute the City's allegedly false reasons for her termination. But to state a claim, Stevens' Amended Complaint must allege that the Defendants created a false and defamatory impression about her in connection with her termination that is or is likely to become public. *See Codd v. Velger*, 429 U.S. 624, 627-29 (1977) (per curiam); *Sciolino v. City of*

1

*Newport News*, 480 F.3d 642, 650 (4th Cir. 2007). Stevens fails to clear that bar even at the pleading stage.

Stevens concedes that she engaged in the conduct that formulated the basis for her termination, only taking issue with the implication she engaged in that conduct knowing it violated City policy. As a result, her Amended Complaint challenges the City's *characterization* of her actions, not the existence of those actions, which fails to state a claim. Moreover, she fails to allege that the letter she contends contained false statements is or will be made public, so her procedural-due-process claim fails for that reason, as well. Without an underlying federal constitutional claim, there is nothing to support Stevens' claim for municipal liability under 42 U.S.C. § 1983. And with no remaining federal question to answer, the Court declines to exercise supplemental jurisdiction over Stevens' state-law claims.

The Court thus GRANTS the Defendants' motion to dismiss Stevens' federal claims WITH PREJUDICE. Lacking an independent basis for subject matter jurisdiction, the Court will *sua sponte* DISMISS the remaining state-law claims WITHOUT PREJUDICE.

## FACTS AND PROCEDURAL HISTORY

The City hired Stevens in August 2021 as a paralegal in the City Attorney's Office, and she was promoted to Senior Paralegal in April 2023. Dkt. 16 ¶¶ 18-19. In April 2025, she was again promoted to Knowledge Management and Lobbying Coordinator, where

2

she contributed to the City Attorney's Office and supported City law enforcement as a civilian paralegal. *See id.* ¶ 21. Most relevant here, as part of her responsibilities, Stevens prepared and filed legal documents using a City procurement card and performed other assignments at the direction of her supervisor, then-City Attorney Charles Watts ("Watts"). *Id.* ¶¶ 32, 34-36, 43, 49.

According to Stevens, she was a model employee. She actively participated in City employee initiatives, and her coworkers considered her a trustworthy colleague. *See id.* ¶¶ 23-27. As explained in her Amended Complaint, in December 2024, Stevens received the Mosaic Award from the City of Greensboro in recognition of her service towards the City's equity goals. *Id.* ¶ 28. And Stevens further alleges that prior to the actions underlying this case, she never experienced any disciplinary actions during her tenure. *Id.* ¶ 31.

The tides shifted in July 2025 when Stevens became embroiled in a scandal that culminated in Watts' resignation. Watts came under scrutiny after funneling City funds towards court filing fees associated with his personal clients. *Id.* ¶¶ 32-34. While the City continued its internal investigation into Watts' misconduct, it placed Stevens on administrative leave around July 1, 2025, after it learned she had paid the filing fees for Watts' personal clients with a City procurement card at Watts' direction. *Id.* ¶ 37. She was terminated soon thereafter on July 24, 2025. Dkt. 16-1. Two of the Official Defendants called Stevens to notify her of her dismissal. Dkt. 16 ¶ 38. And she received a written

letter formalizing her termination (the "July Letter")—the letter that Stevens alleges falsely accused her of misconduct. *See* Dkt. 16-1.

The July Letter explains that the City terminated Stevens for assisting Watts misuse City funds for personal gain. The July Letter begins by stating that "it has been determined that [Stevens] engaged in serious misconduct that is incompatible with the standards expected of city employees." *Id.* It continues by observing that she "drafted and filed multiple legal documents on behalf of the former City Attorney and his private clients while on duty and using city time and resources." *Id.* It also found that Stevens "used a city-issued procurement card on file to pay for costs related to those private clients," an "inappropriate" use of City funds for a "for-profit enterprise." *Id.* But the July Letter acknowledges Stevens' limited culpability, highlighting that her "supervisor assigned these tasks," she had "not received prior discipline and … maintained a positive work record," and she "communicated [Watts'] charges and provided documentation to the procurement cardholder." *Id.* The City ultimately concluded that those exculpatory factors did not "relieve [Stevens] of responsibility" because she was "expected to know and follow policy and raise concerns when [she] observe[d] inappropriate conduct." *Id.* So, given "the overwhelming public interest in this matter, and the need to preserve trust in the City Attorney's Office," the City terminated Stevens. *Id.*

Stevens concedes that the July Letter was never made public (until she filed this lawsuit), *see* Dkt. 16 ¶¶ 84, 102, but she alleges that it is likely to become public given the

4

breadth of North Carolina's public records laws and established City practice, *see id.* ¶¶ 82, 89, 106.

Understandably upset by her termination and the allegations against her, Stevens submitted a notice of appeal under the City's disciplinary appeal process the very next day. *Id.* ¶ 50. She sought access to her personnel records and requested a public hearing to challenge the basis for her termination. *Id.* But the Official Defendants took the position that Stevens was not entitled to a public hearing, so they instead granted her a non-public, thirty-minute virtual appeal hearing before the City Manager. *Id.* ¶¶ 64-66. Stevens appeared at the hearing under protest on August 5, 2025. *Id.* ¶ 70. The Official Defendants declined to hear witnesses and, according to Stevens, denied her timely access to Teams messages and other internal documents used during the investigation. *Id.* ¶ 68. At the close of her appeal, the Official Defendants asked her no questions. *Id.* ¶ 71.

Stevens' appeal was unsuccessful. On August 7, 2025, the City issued to Stevens a second decision letter (the "August Letter") upholding her termination. *Id.* ¶ 74; *see* Dkt. 16-13. The August Letter acknowledges Stevens' contributions during her tenure at the City Attorney's Office but justified her termination after considering "the totality of what occurred." Dkt. 16-13. The August Letter concludes that "based on [Stevens'] performance being inconsistent with the city's expectations for the use of city resources and the standards required of all employees," her termination needed to be upheld. *Id.*

Unlike the July Letter, the August Letter was published publicly by the City, Dkt. 16 ¶ 102, although Stevens does not directly challenge the August Letter in her Amended Complaint, *see id.* ¶ 45(b);[1] *see* Dkt. 18 at 12.

After internal appeal procedures failed, Stevens filed a complaint in this Court against the City and the Official Defendants on October 15, 2025. Dkt. 1. After Defendants moved to dismiss that complaint, Dkt. 11, Stevens filed the now-operative Amended Complaint, Dkt. 16. Stevens brings five separate claims against some or all Defendants: (1) a 42 U.S.C. § 1983 claim for violation of her procedural-due-process rights protected by the Fourteenth Amendment, Dkt. 16 ¶¶ 100-21; (2) a municipal liability claim against the City, *id.* ¶¶ 122-30; (3) two state statutory claims under North Carolina public records law, *id.* ¶¶ 131-52; and (4) a *Corum* direct claim for damages under the North Carolina Constitution, asserting violations of her procedural-due-process rights, *id.* ¶¶ 153-56.[2] Defendants again moved to dismiss some of Stevens' claims, including her federal claims, Dkt. 18, and the parties briefed the merits of that motion, Dkts. 18, 22, 23.

---

[1] Due to a drafting error, the Amended Complaint contains two paragraphs numbered forty-five. To distinguish the two, the Court refers to the first paragraph as "¶ 45(a)" and the second paragraph as "¶ 45(b)."

[2] The North Carolina Supreme Court has held that plaintiffs may bring claims for damages directly under the North Carolina Constitution "in the absence of an adequate state remedy." *Corum v. Univ. of N.C.*, 330 N.C. 761, 413 S.E.2d 276, 289 (1992).

The Defendants' motion to dismiss is now ripe for this Court's review. For the reasons outlined below, Defendants' motion to dismiss is granted in all relevant respects.

**STANDARDS OF REVIEW**

The Court may dismiss a complaint if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual content to demonstrate that her claims are plausible on their face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, the Court considers "documents attached or incorporated into the complaint." *See Riddick v. Barber*, 109 F.4th 639, 645 (4th Cir. 2024) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). Naked assertions of wrongdoing, legal conclusions devoid of factual enhancement, and recitations of the elements of a cause of action do not meet a plaintiff's burden. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Dismissal is proper if the well-pleaded facts of the complaint, taken in the light most favorable to the plaintiff and excluding 'unwarranted inferences, unreasonable conclusions, or arguments,' fail to state a plausible claim for relief." *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023) (quoting *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014)).

**ANALYSIS**

Stevens' federal claims do not meet the plausibility standard. The Amended Complaint fails to allege that the City infringed Stevens' constitutionally-protected

7

liberty interest in her reputation for two independent reasons. *First*, Stevens does not allege that the July Letter was false (and, in fact, concedes that she engaged in the cited misconduct), only challenging the City's characterization of her involvement in Watts' misdeeds. *Second*, in any event, Stevens fails to allege that the City ever made the allegedly false July Letter public (even admitting that it has not). But, fatally, she also fails to allege, in non-conclusory fashion, that there is a likelihood that it will become public in the future. Thus, Stevens fails to plausibly plead a violation of her procedural due process rights under the Fourteenth Amendment.

Because she fails to plead an underlying constitutional violation by the Official Defendants, Stevens' municipal liability claim against the City fails as a matter of law. And with no remaining federal questions (or diversity of citizenship), the Court declines to exercise supplemental jurisdiction over Stevens' state law claims.

The Court begins by addressing the Defendants' grounds for dismissing Stevens' procedural due process claim. It concludes that she has failed to plausibly allege two separate elements of her claim: substantial falsity and publication. It then addresses remaining issues of municipal liability and jurisdiction over Stevens' related state-law claims.

I.      **Stevens Does Not Plausibly Allege a Violation of Her Procedural Due Process Rights.**

Without providing facts to plausibly allege the substantial falsity or publication of the July Letter, Stevens fails to allege a violation of her procedural due process rights. In

8

essence, Stevens merely disputes the City's alleged characterization of her misconduct as "serious," "intentional," or "knowing," rather than the substantial falsity of the allegations levied against her, so she fails to state a claim under relevant precedent. Regardless, Stevens concedes that the July Letter has, prior to his lawsuit, never been made public, and she fails to adequately plead a likelihood of future publication, so her procedural-due-process claim independently falters for that reason, as well.

A plaintiff like Stevens may sue to recover for violations of her federal civil rights under 42 U.S.C. § 1983. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (reiterating that § 1983 is not a source of substantive rights but does provide a method for vindicating federal rights which are provided elsewhere). As relevant here, the Fourteenth Amendment confers on Stevens an individual right to constitutionally adequate procedures before a state may deprive her of certain liberty or property interests. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Stevens must satisfy two components to bring a procedural-due-process claim: (1) she must establish that she has been deprived of a constitutionally-protected liberty or property interest, and (2) she must demonstrate that her liberty or property was deprived without due process of law. *Cannon v. Village of Bald Head Island*, 891 F.3d 489, 501 (4th Cir. 2018).

At the first step, a Stevens is required to identify a protected liberty or property interest to establish her entitlement to a hearing or some other form or pre- or post-

deprivation due process. *See Roth*, 408 U.S. at 569-70. Here, that is easy because the Supreme Court has found that an individual possesses a protected liberty interest in her reputation in some instances, particularly in the context of public employment. *See id.* at 573. And the Fourth Circuit has noted that because the Fourteenth Amendment protects the liberty "to engage in any of the common occupations of life," some publicized firings of public employees may place the "good name, reputation, honor, or integrity" of the former employee "at stake." *See Sciolino*, 480 F.3d at 646. Thus, according to Fourth Circuit precedent, it is sometimes necessary for state or local officials to supply a former employee with a hearing to provide her with an opportunity to challenge the allegedly false reasons for her termination—a so-called "name-clearing" hearing. *Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1990); *see also Sciolino*, 480 F.3d at 649 (harm to the former employee "is not the defamation" but rather "the denial of a hearing at which the dismissed employee has an opportunity to refute the public charge" (quoting *Cox v. N. Va. Transp. Comm'n,* 551 F.2d 555, 558 (4th Cir. 1976)).

But not all terminations deprive a publicly-employed plaintiff like Stevens of her liberty interest in her reputation to the degree entitling her to a name-clearing hearing at the second step of the procedural-due-process analysis. *Sciolino*, 480 F.3d at 649. As the Supreme Court has recognized, a former public employee is only entitled to a post-deprivation name-clearing hearing if all of four separate elements are met. *See Codd*, 429 U.S. at 627-28. At the pleading stage, Stevens can meet her burden by plausibly alleging

10

that the reasons for her termination: (1) placed a stigma on her reputation; (2) were made public by her former employer; (3) were made in conjunction with her termination; and (4) were false. *Sciolino,* 480 F.3d at 646.

The Defendants contend that Stevens fails to plausibly allege two of these elements—namely, that the reasons for her termination were substantially false or disseminated publicly. That is so, they argue, because Stevens expressly admits to performing the actions which formed the basis for her termination, Dkt. 18 at 6-7, and thus, in their view, Stevens only challenges the "falsity of the characterization of [her] conduct," *id.* at 8. They also point out that Stevens only challenges the July Letter, which was never made public. *Id.* at 12.[3]

Stevens, for her part, concedes both that the July Letter was never made public and that she did, in fact, engage in the conduct for which she was terminated. Dkt. 16 ¶ 46; *see also* Dkt. 22 at 8. These are difficult concessions for her to overcome. *See Bishop v. Wood*, 426 U.S. 341, 347-49 (1976) (entitlement to name-clearing hearing requires

---

[3] The Defendants urge this Court to consider only the August Letter—which does not include the alleged falsities—as the letter providing the statement of reasons for Stevens' termination because it is the final letter that ultimately upheld her termination. *See* Dkt. 23 at 4 n.1. But Stevens is the master of her Amended Complaint and "controls much about her suit." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025). And the Court must construe the facts alleged in the Amended Complaint in the light most favorable to Stevens. *Epcon*, 62 F.4th at 885. The Court will therefore follow Stevens' express allegations that the July Letter—and only the July Letter—contains the allegedly false basis for her termination. *See* Dkt. 16 ¶¶ 45(b), 82.

11

publication of termination decision); *Guerra v. Scruggs*, 942 F.2d 270, 278 (4th Cir. 1991) (former servicemember failed to allege entitlement to name-clearing hearing where he "never denied that he had used cocaine," the reason for his dismissal from the military). But Stevens argues that she still plausibly alleges a violation of her procedural-due-process rights. She asserts that the July Letter's contents are in her personnel file and therefore likely to be published, Dkt. 16 ¶ 45(b); *see also* Dkt. 22 at 13, and that Defendants falsely accused her of "dishonest intent, knowing misuse, [and] serious misconduct," Dkt. 16 ¶ 46; *see also* Dkt. 22 at 9. Although she attempts to distinguish relevant authority, the Court does not agree that she has met her burden to plead a violation of her procedural-due-process rights at the motion-to-dismiss stage. Because she has not—and cannot—plead two of the required elements for a post-deprivation name-clearing hearing, Stevens' procedural-due-process claim will be dismissed with prejudice.

### A. Stevens Fails to Allege that the July Letter Contains Substantially False Statements.

The Amended Complaint fails to allege that the allegations in the July Letter are substantially false, dooming Stevens' procedural-due-process claim. *See Codd*, 429 U.S. at 627-28. Stevens does not dispute performing the actions attributed to her in the July Letter. Dkt. 22 at 8 ("Plaintiff does not dispute performing the Assignments [listed in the July Letter]." (quoting Dkt. 16 ¶ 46)). Instead, she challenges the City's terminology in accusing her of "violation of policy, dishonest intent, knowing misuse, and serious misconduct." Dkt. 16 ¶ 46. She puts forth two arguments for why her allegations

12

plausibly allege falsity: (1) the terminology of the July Letter falsely labeled her actions as serious misconduct; and (2) material omissions in the July Letter create a "substantially false" narrative. *See* Dkt. 22 at 9-10. Unfortunately for Stevens, these arguments still fail to allege that the July Letter contained substantially false information as required by relevant Supreme Court and Fourth Circuit precedent.

Falsity is a crucial component of establishing a right to a name-clearing hearing. Without challenging the "substantial truth of the material in question," a post-deprivation hearing would be futile as a means of clearing a terminated employee's name. *Codd*, 429 U.S. at 627-28. The former employee must disagree with her employer on a factual matter which has some significant bearing on her reputation. *Id.* at 627 ("[I]f the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some *factual dispute* between an employer and a discharged employee which has some significant bearing on the employee's reputation." (emphasis added)). Merely suggesting that an employer's published report mischaracterizes a terminated employee's actions is not enough. *See id.* at 628.

Relevant Supreme Court precedent forecloses Stevens' due-process claim. In *Codd*, the Court found that a former police officer failed to challenge the substantial accuracy of a report that terminated him for attempting an apparent suicide after he held a gun to his head during a training. 429 U.S. at 626-27. Although his counsel suggested that the city police department mistakenly labeled the defendant's innocent "horseplay" as attempted

13

suicide, the defendant ultimately failed to raise the requisite factual dispute because he never affirmatively stated that the actions recounted in his termination report did not take place. *Id.* at 628.

Stevens does not dispute the substantial truth of the facts outlined in the July Letter. *See* Dkt. 22 at 8. Indeed, the Amended Complaint admits that Stevens performed the "[a]ssignments" for which she was terminated, including "preparing and filing legal documents and using a City procurement card" to pay court-filing fees. Dkt. 16 ¶¶ 32, 34-36. Instead, according to the Amended Complaint, Stevens disputes the "gist and implication" of the July Letter's contents. *Id.* ¶¶ 45(a)-46. She states that the contents of the July Letter are "reasonably understood" to impute knowing or intentional misuse of City resources on Stevens. *Id.* ¶ 47. That does not state a claim for falsity under *Codd*.

Even crediting Stevens' allegations that the July Letter imputes wrongful intent to her actions, allegations of mischaracterization alone are here, as in *Codd*, insufficient to state a claim for falsity. *See* 429 U.S. at 628 (suggesting that an employer mislabeled a reason for termination "is not enough to raise an issue about the substantial accuracy of the report"); *see also Guerra*, 942 F.2d at 278-79 (finding that plaintiff failed to allege falsity after admitting that the stated reasons for termination were true but not sufficient to justify termination). Just like the police officer in *Codd*, who challenged the characterization of the actions listed in the reasons for termination but not the actions themselves, 429 U.S. at 628, Stevens cannot point to language in the July Letter which

14

allegedly accuses her of knowing misconduct to allege falsity.  Nowhere in the Amended Complaint does Stevens "affirmatively assert[] that" the July Letter is "substantially false," *id.* at 627, beyond conclusory allegations to that effect, Dkt. 16 ¶¶ 45(a), 47.  Even taking the Amended Complaint at its face that Stevens unintentionally violated City policy, Stevens "does not challenge the substantial truth" that she engaged in the alleged misconduct, so the Fourteenth Amendment's Due Process Clause does not "afford" her an opportunity to clear her name.  *See Codd*, 429 U.S. at 627-28.

Nor is it clear that the City *does* imply that Stevens aided Watts' misconduct with intent or knowledge that her actions violated City policy, contrary to Stevens' allegations. The Court may credit an exhibit attached to a complaint that contradicts a plaintiff's express allegations.  *See Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached …, the exhibit prevails."); *see also Thompson v. Ill. Dep't of Pro. Regul.*, 300 F.3d 750, 754 (7th Cir. 2002) ("[W]here a plaintiff attaches documents and relies upon the documents to form the basis for a claim …, dismissal is appropriate if the document negates the claim.").  Even construing the July Letter in Stevens' favor, it appears to acknowledge that Watts "assigned" Stevens the "tasks" that violated City policy, Dkt. 16-1, suggesting that the City believed Stevens to solely be acting at the direction of Watts, rather than with knowledge that she violated City policy.  But even after acknowledging Stevens' limited role in the misconduct, the City concluded that Stevens' actions, even if

15

directed by Watts, "[did] not relieve her of responsibility." *Id.* In short, it is not clear that the July Letter implies what Stevens suggests it does, further undercutting her allegations.

Stevens resists the Court's conclusions by quibbling over the exact language in the July Letter, but none of her arguments carry her allegations across the line. Stevens first latches onto language in the July Letter emphasizing the seriousness of her misconduct, suggesting that it implies intentionality. *See* Dkt. 16 ¶¶ 46, 47 (emphasizing that Stevens "violated policy" and that her violations were "serious misconduct"); *see also* Dkt. 16-1. But again, Stevens *does not contest* that the City's conclusions as to her misconduct were factually correct. Dkt. 16 ¶ 42 ("Plaintiff does not dispute performing the Assignments ...."). Whether or not the City was right to characterize Stevens' misconduct as "serious" violations of City policy, such an allegation does not challenge whether Stevens' misconduct "did not take place as reported." *See Codd*, 429 U.S. at 628; *see also Luy v. Balt. Police Dep't*, 326 F. Supp. 2d 682, 690 (D. Md. 2004) (entitlement to a name-clearing hearing "does not arise by harm to reputation alone"). At bottom, Stevens still only disputes the City's characterization of her conduct.

Stevens next argues that the July Letter mischaracterizes her as an hourly employee. *See* Dkt. 22 at 9; Dkt. 16 ¶ 49. She asserts that because she was not an hourly employee, the July Letter incorrectly stated that her actions were a misuse "of city time." *See* Dkt. 16 ¶ 49; *see also* Dkt. 22 at 8. But even accepting that the City's imprecise language is, in fact, an inaccurate recounting of Stevens' employment status, such a small

16

discrepancy is not enough to establish the falsity of the July Letter because it does not impact the substantive allegations of misconduct against her. *See Codd*, 429 U.S. at 627 ("[I]f the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has *some significant bearing on the employee's reputation*." (emphasis added)).

Lastly, Stevens contends that the July Letter is false by omission because it omits several exculpatory facts, including the City's failure to properly train Stevens in how to use her procurement card. *See* Dkt. 22 at 9; *see also* Dkt 16 ¶ 49. But Stevens does not provide the Court with any authority to support the proposition that a termination decision can be substantially false by omission under *Codd*, nor has the Court found any such cases through its own research. And the authority that the Court was able to locate does not support Stevens' position. *See Dalzell v. Arlington Cnty. Sheriff's Off.*, 646 F. Supp. 3d 731, 736 (E.D. Va. 2022) (former deputy was not entitled to hearing to challenge his termination for falsified surveillance logs on the ground that he was not properly trained on how to submit the logs because the lack of training was not "material to whether he had falsified the surveillance logs"). In any event, these small factual discrepancies with the July Letter are not material because they do not call in to question whether Stevens'

17

misconduct—misusing City funds for Watts' personal gain—"did not take place as reported."  *See Codd*, 429 U.S. at 628.[4]

Without pointing to a substantially false statement in the July Letter that carries significant weight on her reputation, Stevens cannot show that she was entitled to a name-clearing hearing.  As a result, her procedural-due-process claim fails, and dismissal with prejudice is warranted.

**B.    Stevens Fails to Allege that the July Letter Is, Was, or Will Be Made Public.**

Even if Stevens could plead substantial falsity (which she cannot), the Amended Complaint fails to adequately plead that the July Letter is, was, or likely will be made public.  This is fatal to Stevens' procedural-due-process claim.  *See Bishop*, 426 U.S. at 348.  That is the case because, as explained above, a post-deprivation hearing is required only if the employer "creates and disseminates" information about an employee.  *See Codd*, 429 U.S. at 628.

---

[4] To the extent that Stevens asks this Court to adopt a new theory of falsity, it will not do so.  Recognizing a misleading-by-omission theory of liability would require that every public employer affirmatively disclose all facts and circumstance underlying a termination decision even when the stated basis for that termination is substantially true, thereby "unduly interfer[ing] with the employer's personnel administration."  *See Sciolino*, 480 F.3d at 650; *see also id.* at 660 (Wilkinson, J., dissenting) (cautioning against adopting legal standards that may "impose[] enormous costs even when government conduct is found to be blameless, because uncertainty over its application will give rise to litigation in the absence of harm").  It is not the Court's role to interfere with state or local administration in such a manner.

Private communication of the reasons for an employee's discharge cannot entitle a former public employee to a name-clearing hearing. *Robertson v. Rogers*, 679 F.2d 1090, 1091-92 (4th Cir. 1982) (citing *Bishop*, 426 U.S. at 348). When the substantive reasons for an employee's termination are communicated to the former employee only, those communications—whether written or oral—have not been made public and therefore cannot support her claim as a matter of law. *Bishop*, 426 U.S. at 348; *see also Brandt v. Bd. of Co-op Educ. Servs.*, 820 F.2d 41, 44 (2d Cir. 1987) (there is no publication when "the reasons for the employee's termination were communicated orally to the employee in private, and prior to litigation, the reasons had not been made public").

Stevens' allegations of publication are sparse. She identifies the July Letter as the "public record" of her termination. Dkt. 16 ¶ 82. And she acknowledges that she cannot point to a specific instance of past dissemination, conceding that "dissemination by the City has not yet occurred." *Id.* ¶ 45(b). Thus, as Stevens acknowledges, *see* Dkt. 22 at 6, 12-15, she may only rely on the likelihood of publication test articulated by the Fourth Circuit in *Sciolino* and *Cannon*. But Stevens fails to allege publication of the July Letter under that limited framework.

While a plaintiff may fall back on the likelihood of *future* publication to state a claim, she must "allege more than the 'mere presence' of stigmatizing charges that 'may be available' to prospective employers." *Sciolino*, 480 F.3d at 649. To meet that bar, the terminated employee must allege that the former employer either: (1) has a policy of

19

releasing personnel files to all inquiring employers; or (2) is likely to release the employee's personnel files to a certain inquiring employer to which the terminated employee intends to apply. *Id.* at 650; *see also Willis v. City of Virgina Beach*, 90 F. Supp. 3d 597, 617 (E.D. Va. 2015). Where, as here, a plaintiff points to her personnel file as the specific source of publication, she must demonstrate that any termination letter located therein is available to prospective employers upon request. *Cannon*, 891 F.3d at 504 ("[T]he availability upon request of those same letters from the Officers' personnel file may give rise to a constitutionally cognizable public disclosure."); *see also Ledford v. Delancey*, 612 F.2d 883, 886 (4th Cir. 1980) ("Plaintiff does have a protected right with respect to the contents of his personnel file *when that file may be the subject of inspection* by prospective employers." (emphasis added)). The two-part test established by the Fourth Circuit in *Sciolino* is intentionally difficult to overcome; indeed, that court specifically intended it to stop courts from speculating as to "future harms" or analyzing backwards "from the remedy" to the "creation of a constitutional wrong." 480 F.3d at 652.

Stevens' allegations of likely publication are conclusory at best. The Amended Complaint identifies the July Letter as the "charge-setting document that is *likely* to be disclosed and disseminated." Dkt. 16 ¶ 45(b) (emphasis added). It also alleges that the City "maintains" the July Letter "in personnel records that are likely to be consulted or disclosed in response to prospective employer inquiries, employment verification requests, litigation-related disclosures, or public-records requests." *Id.* ¶ 83. And it states

20

that "inspection [of the July Letter] is *likely*, thereby satisfying the publication element." Dkt. 16 ¶ 105 (emphasis added); *see also id.* ¶ 83. These allegations fail to provide non-conclusory allegations supporting the likelihood of publication under either of the prongs in *Sciolino*. *See Iqbal*, 556 U.S. at 681 (conclusory allegations are not well-pleaded); *see also Sciolino*, 480 F.3d at 650 (delineating the two exclusive bases for pleading a likelihood of publication); *Wretman v. Univ. of N.C. Sys.*, No. 1:24-cv-233, 2025 WL 1797220, at *12 (M.D.N.C. June 30, 2025) (allegations that the "discharge will remain part of [plaintiff's] record" and "other individuals will inevitably come to learn of [his] wrongful discharge" failed to state a claim under either prongs of *Sciolino*). In short, Stevens' allegations provide no factual content to support her allegations of likely future publication.

The Fourth Circuit's decision in *Sciolino* itself provides guidance. There, the Fourth Circuit found that a terminated public employee failed to allege publication. *Sciolino*, 480 F.3d at 645. Even though the employee argued that his personnel file and the included termination notice "may be available" to future employers, his failure to use one of the two routes articulated above meant he failed to allege "a *likelihood* that prospective employers (i.e., employers to whom he will apply) or the public at large will inspect the file." *See id.* at 650 (emphasis added). The court declined to adopt the "may be available" standard urged by the plaintiff because it feared that recognizing the deprivation of a liberty interest when there is only a small chance that any prospective employer could inspect the file would result in uneven balancing of procedural-due-

21

process interests. *See id.* at 649. Although Stevens rewords the Amended Complaint to employ the qualifier "likely," *see, e.g.,* Dkt. 16 ¶¶ 45(b), 83, 106, rather than the more equivocal "may" in *Sciolino,* her change in wording does not substantively undermine the fact that her allegations amount to nothing more than the sort of conclusory assertions of future publication held insufficient by the Fourth Circuit.

Stevens suggests that the contents of the July Letter are effectively published because the City has a policy of releasing such information. Dkt. 22 at 13-14. She points to allegations in the Amended Complaint to the effect that she will be required to answer prospective employers' questions regarding the nature of her termination and because "the City's policy and/or practice is to provide the reasons for dismissal or information reflecting the reasons for dismissal, including the substance of the accusations in the [July Letter]." *See* Dkt. 16 ¶¶ 83, 89. But Stevens cannot allege in conclusory fashion that the City has such a policy of publication. *See Sciolino,* 480 F.3d at 650.[5] Even under the relatively permissive Rule 12(b)(6) standard, Stevens must plead factual content supporting her allegations to demonstrate that her claims are plausible on their face. *See Iqbal,* 556 U.S. at 678; *see also Sciolino,* 480 F.3d at 650 (it is not enough for a plaintiff to

---

[5] Tellingly, though the Amended Complaint suggests the July Letter will likely be "consulted or disclosed" were Stevens to apply for another job, Amended Complaint ¶ 83, it fails to identify any specific employer to which Stevens intends to apply or why the City would provide the July Letter to that employer, precluding her from pleading a procedural-due-process violation under the first prong of *Sciolino,* as well. *See* 480 F.3d at 650.

22

allege that the reasons for her termination "may be available to prospective employers"). Instead of providing that factual support, Stevens explicitly alleges that the City has *refrained* from providing the July Letter to public news media in the past, *see* Dkt. 16 ¶ 84; *see also* Dkt. 16-16 at 2, completely undermining her conclusory allegation that the City has a policy of publicizing its reasons for terminating employees.

Nor can Stevens rely on the mere possibility that the July Letter remains in her personnel file to state a claim. *See Harrell v. City of Gastonia*, 392 F. App'x 197, 204 (4th Cir. 2010) ("[P]lacing information in a personnel file does not amount to publication of that information, even if the information is passively available to others to read."). Although Stevens attempts to augment the Amended Complaint's allegations in her opposition brief by stating that she believes the July Letter to be in her personnel file and available to inquiring employees, Dkt. 22 at 13, she has failed to make any non-conclusory *allegation* in her Amended Complaint that the July Letter is available to employers. Even crediting her belief, a party may not amend her pleadings through responsive briefing. *S. Walk at Broadlands Homeowners Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).[6]

---

[6] The Court further observes that Stevens' attempt to shore-up her barebones allegations through reference to the Defendants' Answer is improper, *see* Dkt. 22 at 14, given that the Court is limited to the Amended Complaint and any "documents attached or incorporated into" it when reviewing a motion to dismiss under Rule 12(b)(6), *see Riddick*, 109 F.4th at 645 (internal quotations omitted).

23

At bottom, the facts provided in the Amended Complaint do not make it plausible that, as required by *Sciolino*, the July Letter is available for dissemination from Stevens' personnel file either as a matter of general City policy or in Stevens' specific case. *See Sciolino*, 480 F.3d at 650 ("[A]n employer need only grant a name-clearing hearing if it will make false damaging charges about a former employee available ...."). Accordingly, Stevens' Amended Complaint fails to allege the likely publication of the July Letter. Her procedural-due-process claim falters for that reason, as well.

## II. Stevens' *Monell* Claim Against the City Fails.

Because she has failed to allege facts which plausibly state a claim for a violation of her constitutional rights, Stevens' claim for municipal liability under 42 U.S.C. § 1983 also fails. The "touchstone of a § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *see also Ledford*, 612 F.2d at 887 (noting that the plaintiff would need to show that a deprivation of the involved right was at least partially caused by the defendant county's regulation, ordinance, or policy). In the absence of a constitutional violation, a plaintiff's attempt to hold a municipality liable under § 1983 is a nonstarter. *O.W. v. Carr*, 172 F.4th 337, 356 (4th Cir. 2026). As explained above, Stevens fails to plead her entitlement to a name-clearing hearing. Without an underlying substantive constitutional claim, *Monell* liability cannot attach to the City. Stevens' *Monell* claim is dismissed.

24

**III. The Court Declines to Exercise Supplemental Jurisdiction Over Stevens' State-Law Claims.**

The Court declines to exercise supplemental jurisdiction over Stevens' remaining state-law claims. As explained above, Stevens brings two state-law statutory claims under North Carolina public records law and claim for damages directly under the North Carolina Constitution by way of *Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276 (1992). Whether these claims have merit is a question for the North Carolina courts.

When presiding over a dispute pursuant to federal-question jurisdiction, a federal court retains discretion to exercise supplemental jurisdiction over any related state-law claims raised by the parties. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see also* 28 U.S.C. § 1367. But the Fourth Circuit has repeatedly admonished that district courts should not exercise supplemental jurisdiction after they have resolved all federal claims, especially when they dismiss the federal claims on a motion to dismiss and the remaining state-law claims implicate strong state interests. *See Poppleton Now Cmty. Ass'n v. La Cite Dev., LLC*, 175 F.4th 455, 465 (4th Cir. 2026); *see also Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2022). Stevens' state-law claims concern interpretation of North Carolina's public records laws and require recognition of a damages remedy under the North Carolina Constitution, so they are best left to the North Carolina courts to avoid this Court issuing a "[n]eedless decision[] of state law." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

25

## CONCLUSION

For the reasons stated above, Stevens has failed to allege a violation of her procedural-due-process rights under the Fourteenth Amendment. She is not entitled to a name-clearing hearing because she has failed to allege that the July Letter is substantially false or that it is, was, or will be published. Without an underlying constitutional claim, Stevens' *Monell* claim against the City fails. And the Court does not consider it prudent to retain supplemental jurisdiction over Stevens' remaining state-law claims.

The Court therefore GRANTS the Defendants' motion to dismiss in all relevant respects. Counts I and II of the Amended Complaint are DISMISSED WITH PREJUDICE. Counts III, IV, and V are DISMISSED WITHOUT PREJUDICE so that they may be re-filed in state court should Stevens choose to do so.

A separate Judgment dismissing this action will be filed contemporaneously with this Memorandum Opinion and Order.

It is SO ORDERED.

This is the 29th day of June.


LINDSEY A. FREEMAN
UNITED STATES DISTRICT JUDGE

26